### In re TMI GROWTH PROPERTIES—82, Debtor.

**Bankruptcy No. 1–88–01073.**

United States Bankruptcy Court, N.D. California.

Jan. 19, 1990.

James J. Feder, Kimberly S. Winick, Wyman Bautzer Kuchel & Silbert, Los Angeles, Cal.

James P. Botz, County Counsel, Richard M. Flores, Deputy County Counsel, County of Sonoma, Santa Rosa, Cal., Richard M. Flores, Santa Rosa, Cal., for the County of Sonoma.

Thomas Kelly, Anderson, McDonald, Belden and Kelly, Santa Rosa, Cal., for Great Western Sav.

Wayne Terry, Wyman Bautzer Kuchel & Silbert, Los Angeles, Cal., Sp. counsel for debtor.

Memorandum of Decision

ALAN JAROSLOVSKY, Bankruptcy Judge.

The debtor owns and operates a 252–room hotel in Santa Rosa, California. It filed its Chapter 11 petition on June 15, 1988. Its proposed plan of reorganization is now pending before the court.

On May 18, 1989, the debtor filed a "Notice of and Request for Determination and Reassessment of Tax Liability." The debtor therein requested the County of Sonoma to reassess downward its valuation of the hotel for property tax purposes. The assessed value of the hotel at that time was about $23 million.

On July 14, 1989, a hearing was held before the Sonoma County Assessment Appeals Board; the debtor actively participated. On August 14, 1989, the Appeals Board issued written findings valuing the hotel at $19.3 million. The debtor then filed a motion in this court for, in essence, *de novo* determination that the value of the hotel is much less than $19.3 million.

When the motion first came on for hearing, the court summarily ruled that the debtor, having elected to litigate the matter before the local taxing authority, was no longer entitled to an independent determination by the bankruptcy court. The debtor has moved the court for reconsideration. Upon reflection and further review, it appears that the matter is at the very least not as simple as the court originally thought.

There is one reported case which is factually close. In *In re Northwest Beverage, Inc.* (Bkrtcy.N.D.Ill.1985) 46 B.R. 631, the debtor had filed its Chapter 11 petition while litigation over its tax liability was pending in state court. After the assessments became final under state law, the debtor sought *de novo* determination of its tax liability in bankruptcy court. The bankruptcy court denied the request, citing many cases, most notably *Arkansas v. Thompson* (1941) 313 U.S. 132, 142, 61 S.Ct. 888, 891, 85 L.Ed. 1244, holding that the debtor is not entitled to two separate trials on the same tax. According to the ruling in *Northwest Beverage*, this court was exactly right in denying the debtor's motion.

■ Upon closer examination, however, it appears that the court in *Northwest Beverage* did not discuss the central issue, which is the literal meaning of the Bankruptcy Code. Section 505(a)(1) gives the bankruptcy court the power to determine any tax liability, "whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Section 505(a)(2)(A) carves out an exception for a tax adjudication *before the commencement of the case*. Thus, *Northwest Beverage* was correctly decided if state court litigation pending when the bankruptcy is filed is deemed to be adjudication before the commencement of the bankruptcy. However, if such state litigation is deemed to be postpetition, then the holding seems at odds with the plain language of the Code. In this case, all aspects of the tax litigation were postpetition, so it is clear that section 505(a)(2)(A) is not applicable.

In *Arkansas v. Thompson* the holding of the Court was:

Nothing in this language [of the Bankruptcy Act] indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact—the value of property taxed.

Despite a dearth of commentary and some authority that *Arkansas* is still good law under the Code (see 3 Collier on Bankruptcy (15th Ed.), section 505.04[1]), the court is led to the inescapable conclusion that section 505(a)(1) expressly overrules *Arkansas* where the tax liability has not been adjudicated before the commencement of the bankruptcy. To hold otherwise would be to judicially erase the phrase "whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction" from the law.

■ Moreover, it is not beyond Congress' power to direct that the court not give *res judicata* effect to particular state adjudications. The full faith and credit ob-

ligations of this court stem from one federal statute, 28 U.S.C. section 1738, and accordingly may be modified by subsequent statutes, including section 505 of the Bankruptcy Code. *In re Buchert* (Bkrtcy.N.D. Ill.1987) 69 B.R. 816, 819. In fact, prior to *Arkansas* the great weight of authority was that the bankruptcy court had full power to examine the validity of all tax assessments. 3 Collier on Bankruptcy (15th Ed.), section 501.01, p. 505–3. See, e.g., *Dickinson v. Riley* (8th Cir.1936) 86 F.2d 385, 387.

█ Even though the court finds that it can redetermine the debtor's tax liability, its first instinct is still to abstain from doing so in order to avoid giving the debtor two bites of the apple even if the Code permits two bites. However, the court sees two compelling reasons for hearing the matter *de novo*.

First, the court is convinced that the debtor did not intend to manipulate the Code, but rather interpreted section 505(b)(2) as *mandating* county adjudication before bankruptcy review. While the court doubts this interpretation, it nonetheless notes that the debtor stands before the court in good faith.[1]

Second, events since the county hearing have called the validity of its findings into question. As part of the reorganization process Great Western Savings, a creditor secured by a senior lien on all of the hotel assets, has agreed to reduce its claim from $15.4 million to $13.5 million. This is strong circumstantial evidence that the county assessment is too high. Moreover, the county clearly based its assessment on what it felt the hotel's occupancy rate

*should be* with proper management, thus ignoring a substantial history of questionable management which might be very costly to set right. These factors outweigh the court's desire to honor the county's assessment as a matter of comity.

Accordingly, the motion to reconsider the matter will be granted and the prior order denying the debtor's motion will be vacated. A status conference will be held on February 12, 1990, at 2:00 P.M., when the matter shall be set for such hearing as the court deems appropriate.

---

1. Section 505(b)(2) reads as follows:

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(2) upon payment of the tax determined by the court, after notice and a hearing, after

completion by such governmental unit of such examination;

It seems more likely to the court that this section was intended to be applicable to taxing authorities like the Internal Revenue Service, which examine returns and assess a tax before adjudication. The court does not believe that "examination" means "adjudication." A determination of this issue is not necessary at this time; it is sufficient to note that the debtor believes in good faith that it has followed Code-mandated procedure.